[No. 51204-8-I. Division One. June 28, 2004.]

THE STATE OF WASHINGTON, *Appellant*, v. JASON HECKEL, *Respondent*.

*Dale L. Crandall*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Paula L. Selis* and *Owen F. Clarke, Jr., Deputies*, for respondent.

KENNEDY, J. — In 1998, the Washington State Attorney General filed suit against Oregon resident Jason Heckel, alleging violations of Washington's commercial electronic mail act (the Act), chapter 19.190 RCW. The Act does not prohibit spam as such; rather, it prohibits misrepresentation in the subject line or transmission path of any unsolicited commercial e-mail message sent from a computer located in Washington or sent to an e-mail address that the sender knows or has reason to know is held by a Washington resident. It also prohibits use of a third party's Internet domain name without permission of that party. In 2000, on cross-motions for summary judgment, the trial court dismissed the State's claims, concluding that the Act violated the commerce clause of the United States Constitution. In *State v. Heckel*, 143 Wn.2d 824, 24 P.3d 404 (*Heckel* I), *cert. denied*, 534 U.S. 997 (2001) our Supreme Court held that the Act does not unduly burden interstate commerce, reversed the dismissal, and remanded the case to the trial court.

In August 2002, the State moved for partial summary judgment. On September 13, 2002, the trial court granted summary judgment to the State, and on October 18, 2002, entered a judgment and decree, imposing permanent injunctions and a civil penalty on Heckel and awarding attorney fees and costs to the State.

Heckel appeals, contending (1) that the State failed to show that he knew or had reason to know that his spam—which contained misrepresentations in the subject lines and used a third party's domain name without permission—had been sent to a particular e-mail address held by a Washington resident, (2) that the Act as applied to him in this case violates the commerce clause, and (3) that there is a factual issue for trial regarding whether his subject lines were "misleading" under First Amendment analysis of

commercial speech. We reject these contentions and affirm the trial court's judgment and decree.

## FACTS

In 1997, Jason Heckel developed a 46-page on-line booklet entitled "How to Profit from the Internet," which included information on setting up an on-line promotional business, acquiring free e-mail accounts, and obtaining software to build basic websites and send bulk e-mail. From June to October 1998, Heckel sent between 100,000 and 1,000,000 unsolicited commercial e-mail, or "spam," messages over the Internet each week. Each message used one of two subject lines: "Did I get the right e-mail address?" and "For your review—HANDS OFF!" Clerk's Papers at 39. The text of each message was a sales pitch for his booklet, priced at $39.95, and included an order form listing the mailing address for Heckel's Salem, Oregon, business, Natural Instincts.

In June 1998, after receiving complaints from Washington recipients of Heckel's messages, David Hill of the attorney general's office sent Heckel a letter advising him of Washington's new law regarding commercial e-mail. On or around June 25, 1998, Heckel telephoned Hill for more information. During their conversation, Hill explained the provisions of the Act and procedures that bulk e-mailers can use to identify Washington e-mail address holders. Hill specifically referred Heckel to the Washington Association of Internet Service Providers (WAISP) on-line registry, where Washington residents who do not wish to receive spam can register their e-mail addresses, and thus where responsible e-commerce businesses can find lists of Washington e-mail addresses they should not contact.

After this conversation, Heckel did nothing to change his spamming procedure, and consumers continued to file complaints with the attorney general's office regarding Heckel's spam. Hill created a complaint matrix detailing 20 such complaints and indicating that at least 16 involved mes-

sages received from Heckel after June 26.[1] At least one of these complainants had previously registered her e-mail address at the on-line registry above mentioned, before she received Heckel's spam.

To send his spam, Heckel used at least 12 different Internet addresses with the domain name "juno.com," which accounts were generally cancelled by Juno within two days of his bulk e-mail transmissions. When Juno would shut down one of Heckel's accounts, Heckel would simply open a new one and send out more batches of spam. Some recipients attempted to reply to Heckel's spam and failed—in some cases because Juno had already terminated the account or accounts from which the spam had been sent.

Some recipients stated that the domain name Heckel used to send the spam was different from the domain identified in the message. In particular, nine messages indicated that they originated from "13.com" but the "message-id" display demonstrated that they had actually been transmitted from a different domain. The owner of the inactive domain name of "13.com" since 1995 submitted an unrebutted declaration stating that he had never authorized Heckel to use the domain name.

Heckel sold 17 copies of his booklet to Washington residents before the State filed its suit. In September 1998, Heckel cashed a check sent by a Washington resident in response to one of his spam messages.

In response to the State's motion for summary judgment, Heckel did not contest any of the facts above described. The trial court granted the State's motion on September 13, 2002, and on October 18, 2002, granted injunctive relief, imposed a civil penalty of $2,000, and ordered Heckel to pay the State's attorney fees and costs of $96,197.74.

## ANALYSIS

■ Viewing all facts in the light most favorable to the party challenging the summary dismissal, this court re-

---

[1] Three entries on the matrix do not indicate the date of receipt, and one was received on June 22, 1998.

views a trial court's grant of summary judgment de novo. *Heckel* I, 143 Wn.2d at 831-32. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993); CR 56(c). A legislative act is presumed constitutional, " 'and the party challenging it bears the burden of proving it unconstitutional beyond a reasonable doubt.' " *Heckel* I, 143 Wn.2d at 832 (quoting *State v. Brayman*, 110 Wn.2d 183, 193, 751 P.2d 294 (1988)).

The Act provides in pertinent part:

(1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or *to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that*:

(a) *Uses a third party's internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message*; or

(b) *Contains false or misleading information in the subject line.*

(2) For purposes of this section, a person knows that the intended recipient of a commercial electronic mail message is a Washington resident if that information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address.

RCW 19.190.020 (emphasis ours).

Heckel does not deny that he violated RCW 19.190.020(1)(a) by using the domain name "13.com" without the permission of the name's owner, thereby misrepresenting or obscuring the point of origin or the transmission path of at least nine of his spam messages sent to Washington residents. Instead, Heckel contends that the State failed to present evidence that he sent any e-mail "to an

electronic mail address that [he knew], or [had] reason to know, [was] held by a Washington resident."

In support of this assertion, Heckel first argues that the *only* way the State could prove that he had a "reason to know" is by proving facts to satisfy RCW 19.190.020(2), that is by presenting evidence to demonstrate that the information regarding Washington residency was available from the registrant of the Internet domain name of each particular e-mail address at issue.

Not only does Heckel fail to cite any authority for this position, but also we find his proposed reading of the statute absurd. RCW 19.190.020(2) states that a person *knows*—in other words, actual knowledge is imputed—if residency information is available from the domain name registrant. The statute does *not* state that proof that the residency information is available from the Internet domain name registrant is the *exclusive* means of proving knowledge under the statute. Moreover, this section says nothing about what evidence is sufficient to demonstrate that a sender had a *"reason to know"* that an e-mail address was held by a Washington resident. Finally, there is nothing in the record to indicate that the State intended to rely on RCW 19.190.020(2) to show Heckel's knowledge here.

Relying on our Supreme Court's analysis in *Heckel* I of *American Library Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997), Heckel next contends that the Act and the commerce clause required the State to prove he had knowledge as to *specific e-mail addresses*. In *American Library*, the court held that a New York statute that made it a felony to use a computer communication system to display or distribute sexually explicit content to minors violated the commerce clause. 969 F. Supp. at 169. The statute was overreaching in that it applied to any type of Internet activity—even websites or chat rooms where individuals posting content that would be legitimate for adults have no control over future access by minors, in New York or anywhere else. As our Supreme Court observed in *Heckel* I, that case is distinguishable because here the Act is limited to deceptive

unsolicited commercial e-mail (UCE) messages sent to a Washington resident—in other words, the sender actually intends the recipient to access the content. *Heckel* I, 143 Wn.2d at 840.

Heckel argues that the court's statement, "the Act reaches only those deceptive UCE messages directed to a Washington resident," *Heckel* I, 143 Wn.2d at 840, indicates that to satisfy the Act and the commerce clause the State must prove that he knew that *specific e-mail addresses* were registered to Washington residents and that here, although he knew based on his conversation with Hill on June 25 that some of his e-mails had been received by unidentified Washington residents, the State failed to prove that he had specific knowledge that any particular addresses belonged to Washington residents as required by the statute.

Again, if we were to interpret the Act the way Heckel suggests, no spammer sending deceptive e-mail could ever violate the Act as long as he used a bulk e-mail program to harvest large numbers of addresses without regard to residence of the owners, because he could always claim that he had no specific knowledge about particular recipients. But Heckel does not dispute that he actually intended to send his message to each person who received it. He also does not dispute that Hill advised him about the Act and that the Attorney General's Office had received complaints from Washington residents who had received his e-mail. He also does not dispute the State's evidence that more Washington residents actually received his e-mails *after* his conversation with Hill. Despite his knowledge that the bulk e-mail software he was using to send out his spam had gathered addresses and sent e-mail to Washington residents, Heckel failed to take any action whatsoever to determine whether any of his intended bulk e-mail recipients were Washington residents or to change his practices to comply with the Act, and in fact he continued to send the same e-mail messages to more Washington residents. The trial court properly found that these facts were sufficient to demonstrate Heckel's knowledge that he was in fact directing deceptive spam to Washington residents.

The State urges this court to adopt the reasoning of the trial court and at least two federal district courts and hold that a spammer sending millions of e-mails over the Internet has reason to know that he could be "ha[u]led into court in a distant jurisdiction to answer for the ramifications of that solicitation." *Internet Doorway, Inc. v. Parks*, 138 F. Supp. 2d 773, 779-80 (S.D. Miss. 2001); *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 618 (E.D. Va. 2002). Heckel urges a rejection of this "statistical argument," arguing that the Act requires a "particular" or "specific" e-mail address of a Washington resident and that reasonable minds could differ on whether sending any particular number of e-mail messages must statistically impose a conclusive presumption that some of those would be directed to the addresses of Washington residents. But Heckel does not dispute that he sent between 100,000 and 1,000,000 messages *per week* over a period of at least four months. Based on these numbers, we agree with the State and conclude that Heckel had reason to know that his spam would be directed to Washington residents.

The State also contends that Heckel had reason to know that his spam was reaching Washington residents because some of them were listed at the website of the WAISP, where Washington residents who do not want to receive spam can register. *See Heckel* I, 143 Wn.2d at 837 n.13. Heckel responds that evidence that recipients[2] of his spam were registered with WAISP is insufficient to prove that he had reason to know they were Washington residents because there was no evidence in the record on how the registry works and reasonable minds could differ on whether accessing the registry is unduly burdensome or whether an advertiser ought to be required to check one or more registries before sending out e-mail.

Again, we agree with the State. As of June 25, Heckel knew that his spam was reaching Washington residents

---

[2] One spam recipient's affidavit indicates that she was registered with WAISP and Hill's complaint matrix indicates that 11 other recipients were also registered with WAISP.

and that they were complaining to the attorney general. He knew that the Act prohibited the kinds of e-mail he was sending. He also knew, based on his conversation with Hill, that the WAISP registry listed Washington residents that did not want unsolicited commercial e-mail. Because Heckel fails to identify any material fact for trial regarding his knowledge as above described, and because reasonable minds could not find that he did not have reason to know that he was sending e-mail to Washington residents, summary judgment was proper.

Heckel acknowledges in his reply brief that our Supreme Court has held that the Act does not facially violate the commerce clause but argues that it failed to consider whether it violates the clause as applied in this case. Relying on *Quill Corp. v. North Dakota*, 504 U.S. 298, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992), Heckel contends that his lack of ties with the state of Washington—no employees, representatives, or physical facilities—indicates a lack of a sufficient nexus with the State, such that he cannot be subject to the Act. But as the State points out, in *Quill*, the question was whether North Dakota violated the commerce clause by imposing an excise tax on an out-of-state company operating a mail order business. Because the Act does not involve taxation and the burden it imposes is slight in comparison, *Quill* is inapposite.

Moreover, Heckel reads *Heckel* I too narrowly. In *Heckel* I, 143 Wn.2d at 833, the court explained not only that the Act is not facially discriminatory but also that it applies even-handedly to both in-state and out-of-state spammers.

Finally, Heckel makes no reasoned argument showing how an act that prohibits only deceptive spam and that does not thereby violate the commerce clause on its face could possibly violate the commerce clause as applied to Heckel's deceptive spam. We conclude that the Act, as applied to Heckel in this case, does not violate the commerce clause.

Heckel also contends that the Act violates the First Amendment because it is vague and overbroad. Heckel also attempts to create an issue of material fact for trial by

asserting that the subject lines on his e-mails were not misleading, particularly when viewed with the body of the e-mail.

Commercial speech is entitled to First Amendment protection if it is not misleading. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980). The Act prohibits unsolicited commercial e-mail with false or misleading information in the subject line. RCW 19.190.020(1)(b). The trial court concluded that reasonable minds could not differ with the conclusion that Heckel's two subject lines, "Did I get the right e-mail address?" and "For your review—HANDS OFF!," were deceptive and misleading when the body of the e-mail consisted of an unsolicited advertisement. We agree with the trial court.

Heckel does not claim that his spam was anything other than commercial speech. To demonstrate that the subject line is not misleading, Heckel urges this court to consider the first line of the body of the e-mail or the whole message of the e-mail rather than viewing the subject line alone, "artificially segregating the subject line from the rest of the communication and banning creative advertising to entice potential customers to read the rest of the commercial speech." Br. of Resp't at 35. But the Act does not regulate the body of the e-mail, only the subject line. Here, the subject line was clearly designed to entice the recipient to open the message, not with creative advertising as Heckel contends, but by enticing the recipient to believe that the message might be from a friend or acquaintance or business contact who is trying to "get the right e-mail address" or who is sending something confidential, rather than a commercial advertisement. The trial court did not err.

Heckel's reliance on *Reno v. American Civil Liberties Union*, 521 U.S. 844, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997), is equally unpersuasive. *Reno* does not involve commercial speech, but concerns sexually explicit communications on the Internet and a federal statute that used terms such as "indecent" and "patently offensive."

Because the Act is narrowly tailored to regulate only deceptive commercial speech, which is not protected by the First Amendment, the Act is not overly broad. Neither is the Act unconstitutionally vague. Contrary to Heckel's argument, the Act's prohibition against "misleading" subject lines or transmission paths is not vague. Indeed, the United States Supreme Court used the word "misleading" in *Central Hudson*, 447 U.S. at 566, as part of the appropriate standard in determining when commercial speech is constitutionally protected: "For commercial speech to come within [the protection of the First Amendment], it at least must concern lawful activity and not be misleading." *Id. See also, City of Yakima v. Irwin*, 70 Wn. App. 1, 851 P.2d 724 (1993) (holding that an ordinance that prohibited making "misleading" police reports not unconstitutionally vague).

## CONCLUSION

The trial court did not err in granting summary judgment to the State. Heckel's spam clearly fell within the hard core of the prohibitions contained in the Act: The spam was accompanied by misleading subject lines, was transmitted along misleading paths, and nine of the spam messages used the domain name of a third party who had not given permission to Heckel to use that inactive domain name. Heckel received actual notice from the attorney general that his spam violated Washington's Act and that it was in fact being received by Washington residents. Mr. Hill explained to Heckel how he could go about learning the e-mail addresses of Washington residents who do not wish to receive spam at all—let alone deceptive spam. Not only did Heckel fail to change his procedures for disseminating spam, but he also failed to change his misleading subject lines, a means by which he could have brought his advertisements within the parameters of the Act—insofar as misleading subject lines are concerned, anyhow. The Act does not violate the commerce clause, either facially or as applied to Heckel. The Act does not violate the First Amendment, either facially or as applied. The Act is not unconstitution-

ally vague. We affirm the trial court's summary judgment ruling and the decree that was subsequently entered.

Cox, C.J., and Grosse, J., concur.

Review denied at 153 Wn.2d 1021 (2005).